# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNNECTICUT

| | | |
|---|---|---|
| _____ ) | | |
| BART BOKANOSKI | ) | CIVIL ACTION NO: |
| ROBERT DIZINNO, and | ) | |
| JEREMY ANDERSON, | ) | |
| on behalf of themselves and all | ) | |
| others similarly situated, | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | |
|     v. | ) | JANUARY 6, 2015 |
| | ) | |
| LEPAGE BAKERIES PARK ST., LLC, | ) | |
| C.K. SALES CO., LLC, | ) | |
| | ) | |
|     Defendants | ) | |
| _____) | | |

## CLASS ACTION COMPLAINT

### Introduction

1.      This is an action brought on behalf of current and former distributors who have worked for Defendants LePage Bakeries Park St., LLC ("LePage Bakeries") and CK Sales Co., LLC ("CK Sales") (together, "Defendants") challenging its unlawful misclassification of them as independent contractors instead of employees.  The above-named Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated in the State of Connecticut, seeking remedies for statutory and common law violations resulting from this misclassification.

**Parties**

2.      Plaintiff Bart Bokanoski is an adult resident of Southbury, Connecticut and a citizen of Connecticut.  Since approximately October 2013, Bokanoski has delivered baked goods on behalf of Defendants in Connecticut. During the relevant time, he was Defendants' employee as that term is defined Conn. Gen. Stat. § 31-71a.

3.      Plaintiff Robert DiZinno is an adult resident of Oakville, Connecticut and a citizen of Connecticut.  Since approximately October 2013, DiZinno has delivered baked goods on behalf of Defendants in Connecticut. During the relevant time, he was Defendants' employee as that term is defined Conn. Gen. Stat. § 31-71a.

4.      Plaintiff Jeremy Anderson is an adult resident of Bristol, Connecticut and a citizen of Connecticut.  Since approximately October 2013, Anderson has delivered baked goods on behalf of Defendants in Connecticut. During the relevant time, he was Defendants' employee as that term is defined Conn. Gen. Stat. § 31-71a.

5.      The above-named plaintiffs bring this action on their own behalf and on behalf of all similarly-situated individuals.

6.      Defendant CK Sales is a Limited Liability Company formed in Delaware.  CK Sales conducts business through distribution facilities in Connecticut, among other states.

7.      Defendant LePage Bakeries is a Limited Liability Company formed in Maine.  It conducts business through distribution facilities in Connecticut, among other states.

**Jurisdiction and Venue**

8.      The court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) and (d), based on the diversity of the parties and the amounts in controversy.  On information and belief, the amount in controversy with respect to one or more of the named

plaintiffs exceeds $75,000, and the amount in controversy for the putative class as a whole exceeds $5 million.

9.      Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (c), because CK Sales does business in Connecticut and is subject to personal jurisdiction in this District.

## Facts

10.     The business of CK Sales, LePage Bakeries, and their affiliates consists of manufacturing, delivering, and selling baked goods under brand names such as Flower Foods, Country Kitchen, and Wonder Bread.

11.     Defendants and their affiliates use about forty to fifty individuals within Connecticut to deliver baked goods and stock the shelves at certain stores.

12.     Some of these delivery drivers are designated as employees ("employee drivers"). Employee drivers receive all the benefits of employment, including protection under state and federal employment laws, such as laws governing workers' compensation, unemployment benefits, employment discrimination, and workplace safety.

13.     Other delivery drivers, such as Plaintiffs Bokanoski, DiZinno, and Anderson, are designated as independent contractors. They are referred to as Independent Distributors (collectively, "Distributors").

14.     Prior to October 2013, Plaintiffs performed delivery work for Defendants as formally designated "employees," rather than independent contractors.  In October 2013, Defendants informed Plaintiffs that if they wished to continue their delivery work for Defendants, they would be required to enter into a "Distributor Agreement," and begin performing their work as Independent Distributors.  Defendants assured Plaintiffs that they would earn the same amount as

Independent Distributors that they had earned as employees.  The three named Plaintiffs began their work as Distributors at that time.

15.     Like employee drivers, the Distributors deliver baked products to retailers and other customers, thereby providing an integral service to the baked goods business of CK Sales and its affiliates. On a typical week, Distributors such as the named Plaintiffs work at least forty hours per week delivering the baked goods for Defendant.

16.     Defendants treat Distributors as independent contractors, claiming that they are not entitled to fringe benefits, expense reimbursement, or to protection under state and federal employment laws.  Defendants and their affiliates pay payroll taxes for their employee drivers, but they do not pay payroll taxes for their Distributor drivers.

17.     In addition, the use by Defendants of Distributors allows Defendants to reduce their normal business expenses, and to reduce the burdens on their employees, and to shift those burdens to Distributors without additional compensation.  As a result, Distributors such as the named Plaintiffs frequently earn less on a weekly basis than they used to earn when Defendants treated them as employees.

18.     Defendants require their Distributors to enter into a form contract, typically called a "Distribution Agreement."  The terms and conditions of each Distributor's distribution agreement are the same in material respects.

19.     Defendants require all Distributors to incorporate as either a C or S corporation prior to executing a distribution agreement.

20.     The distribution agreements are adhesion contracts drafted exclusively by Defendants.  Defendants do not negotiate the material terms of the distribution agreements with

the Distributors, who are required to sign the agreements on a "take-it-or-leave-it" basis.  The distribution agreements purport to classify the Distributors as "independent contractors."

21.     Through these agreements, Defendants require Distributors to pay to work.  For example, Plaintiffs and class members were required to pay thousands of dollars for the purported right to purchase a territory, or route, in order to begin work for Defendants.  This practice violates Conn. Gen. Stat. § 31-73, which prohibits employers from demanding or receiving any refund of wages or sum of money as a prerequisite to secure employment or continue in employment.

22.     Defendants also deduct various amounts from the pay of Plaintiffs and class members.  For example, Defendants deduct hundreds of dollars from Plaintiffs' and class members' wages on a weekly basis for purported fees, insurance charges, and truck lease payments.  This practice violates Conn. Gen. Stat. § 31-71e, because Defendants are not otherwise empowered to make these deductions under state or federal law, Defendants do not have written authorization for the deductions on an approved form, the deductions are not authorized for medical care, the deductions are not contributions to an appropriate retirement plan, and the Defendants are not required by another state's law to make said deductions.

23.     Defendants have the right to control, and in fact exercise substantial control over the work performed by the Distributors.

24.     The control retained and exercised by Defendants includes, but is not limited to, the fact that Defendants:

a.     Employ managers who have supervisory and disciplinary authority over the Distributors.

b.     Require the Distributors to comply with its policies and procedures, including the time, place, and manner of pick-ups and deliveries.  These policies and procedures are unilaterally established by Defendants and

govern, among other things, the ordering of products, the frequency of deliveries and removal of stale product, the manner in which delivery drivers must conduct themselves, and the pricing of product. For example, Defendants often require Distributors to bring a particular amount of product to a store location, even when the Distributor has determined that a lesser amount should be delivered.

c.      Require Distributors to display product according to its requirements, and performs spot-checks to ensure Distributors' compliance with these policies.

d.      Prevent Distributors from choosing when and how frequently they work. Instead, Defendants instruct Distributors as to which stores they should be servicing and how many deliveries they should be making per day and per week.

e.      Require Distributors to return to the warehouse each day after completing their deliveries so that they may "upload" data to Defendants' system, and sort stale bread for Defendants, which Defendants then resell.

f.      Require Distributors to obtain its express, prior approval before selling their routes or substituting another driver for their route.

g.      Prohibit the Distributors from exercising independent business judgment regarding the services they perform and the locations at which they perform these services. For example, Distributors are prohibited from discontinuing deliveries to certain stores, even if the deliveries are no longer profitable.

h.      Prohibit Distributors from participating in activity considered competitive to CK Sales and its affiliates.

25.     The Distributors and Defendants are engaged in the same usual course of business: the sale and distribution of baked goods.

26.     The Distributors are not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as the services they provide to Defendants. Based on all the hours that Defendants require Plaintiffs to spend making deliveries and servicing their route(s), there is little or no time left for Plaintiffs to make deliveries for any other company besides Defendants. In addition, Defendants restrict Distributors from engaging

6

in various activities that could be competitive to Defendants. As a result, the Plaintiffs and

Distributors are economically dependent on Defendants.

27.     Defendants' misclassification of its delivery drivers as independent contractors is

an arbitrary and unreasonable violation of Connecticut law undertaken in bad faith.  Defendants

required employee distributors like Plaintiffs to enter into Distributor Agreements under which

they are designated as independent contractors, even though Defendants maintain substantial

control over the Distributors' work and the Distributors continue to perform the core function of

Defendants' baked goods delivery business.  Defendants' misclassification scheme was

implemented despite the fact that under Connecticut law there is a strict test that must be

satisfied for individuals to lawfully be classified as independent contractors.  Defendants'

knowingly and intentionally engaged in this misclassification so that they could unlawfully shift

business expenses to their employees.

<b>Class Action Allegations</b>

28.     Plaintiffs bring this class action lawsuit on behalf of all Distributors who obtain or

deliver Defendants' products in Connecticut, and who are or have been misclassified as

independent contractors.

29.     The members of the class are so numerous that joinder of all of them is

impracticable, and treatment of a class action is the superior method to adjudicate the class

members' claims.  Upon information and belief, there are about forty to fifty members of the

putative class.

30.     There are issues of law and fact common to all class members because

Defendants have misclassified them as independent contractors rather than as employees and

have unlawfully deprived them of the wage treatment and benefits accorded employees. These

questions of law and fact predominate over any questions affecting only individual class members.

31.     The named plaintiffs and class counsel will fairly and adequately represent the interests of the class.

## COUNT I

## CONNECTICUT INDEPENDENT CONTRACTOR LAW

32.     Plaintiffs hereby incorporate and reallege all facts set forth above.

33.     Defendants have misclassified the Plaintiffs and other similarly situated delivery drivers as independent contractors when they are actually employees under the Connecticut wage laws.

34.     This misclassification violates Conn. Gen. Stat. § 31-71a as interpreted by Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc., 231 Conn. 690, 651 A.2d 1286 (1995).  This claim is asserted pursuant to Conn. Gen. Stat. § 31-72.

## COUNT II

## ILLEGAL WITHHOLDING OF WAGES

35.     Plaintiffs hereby incorporate and reallege all facts set forth above.

36.     Defendants' practice of making various unlawful and unauthorized deductions from the Plaintiffs' and class members' compensation violates Conn. Gen. Stat. § 31-71e.

37.     This claim is brought pursuant to Conn. Gen. Stat. § 31-72.

**COUNT III**

**ILLEGAL REFUND OF WAGES FOR FURNISHING EMPLOYMENT**

38.     Plaintiffs hereby incorporate and reallege all facts set forth above.

39.     As set forth above, Defendants' practice of requiring Plaintiffs and class members to pay tens of thousands of dollars in exchange for the right to work for Defendants violates Conn. Gen. Stat. § 31-73.

40.     This claim is brought pursuant to Conn. Gen. Stat. § 31-72.

**COUNT IV**

**UNJUST ENRICHMENT**

41.     As set forth above, by misclassifying Plaintiffs and class members as independent contractors when they are employees under Connecticut law, Defendants were unjustly enriched because they unlawfully shifted their business costs and expenses to the Plaintiffs and class members, to the detriment of Plaintiffs and class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs asks this honorable Court to enter the following relief:

a.      An order certifying a class of similarly situated individuals pursuant to Fed. R. Civ. P. 23;

b.      An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendants' misclassification, as described in this Complaint;

c.      Restitution of the payments made by Plaintiffs in order to purchase their routes, and all other business expenses born by Plaintiffs on behalf of Defendants, in an amount sufficient to make Plaintiffs whole;

d.      Statutory penalty damages, pursuant to Connecticut law;

e.      An order enjoining Defendants' from continuing their illegal practices and ordering them to reclassify Plaintiffs and the members of the class as employees;

f.      Attorneys' fees and costs; and

g.      Such other legal and equitable relief as the Court deems just and proper.

BART BOKANOSKI
ROBERT DIZINNO, and
JEREMY ANDERSON,
on behalf of themselves and all
others similarly situated,

By their Attorneys,


/s/ Harold Lichten _____
Harold L. Lichten
*Pro hac vice anticipated*
Matthew W. Thomson
*Pro hac vice anticipated*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA  02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com


/s/ Richard Hayber_____
Richard E. Hayber (ct11629)
Hayber Law Firm, LLC
Employee Rights Advocates
221 Main Street
Hartford, CT  06106
(860) 522-8888
rhayber@hayberlawfirm.com

11